IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Christopher Dale Fletcher, ) | C/A No. 0:12-2888-DCN-PJG |
|                Plaintiff, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner ) of Social Security,[1] ) | |
|                Defendant. ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Christopher Dale Fletcher ("Fletcher"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be remanded for further proceedings.

## ADMINISTRATIVE PROCEEDINGS

In August 2008, Fletcher applied for DIB, alleging disability beginning February 13, 2008. Fletcher's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on December 1, 2010, at which Fletcher, who was represented by Paul T. McChesney, Esquire, appeared and testified. After hearing

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



testimony from a vocational expert, the ALJ issued a decision on February 11, 2011 finding that Fletcher was not disabled. (Tr. 12-20.)

Fletcher was thirty-eight years old on his disability onset date. (Tr . 108.) He has a high school education and past relevant work experience as a fork-lift operator, frozen food manager at a grocery store, ingredient handler, lead technician for underground storage tank testing, machine operator, and in the United States Navy. (Tr. 113, 120.) In his application, Fletcher alleged disability since February 13, 2008 due to three level neck surgery, bulging discs in lower back, degenerative joints and disc, bursitis in shoulders, right shoulder scope, hypothyroidism, pain in both hips, and neck and shoulder spasms and pain. (Tr. 112.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since February 13, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe combination of impairments: obesity, cervical and lumbar degenerative disc disease, degenerative joint disease of the hips, status post bilateral shoulder surgery, and depression (20 CFR 404.1520(c)).

    *   *   *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 20 CFR 404.1525 and 404.1526).

    *   *   *

5. . . . [T]he claimant has the physical residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(b) except he is limited to frequent pushing/pulling with the left lower extremity, occasional climbing of ramps/stairs, occasional stooping and crawling, frequent balancing, kneeling, and crouching, and occasional overhead reaching bilaterally. He must never climb ladders, ropes or scaffolds and he must avoid concentrated exposure to unprotected heights and hazardous machinery. I further find that



> the claimant retains the mental residual functional capacity to concentrate, persist, and work at pace to carry out simple, repetitive tasks at level 3 reasoning per the DOT for 2-hour periods in an 8-hour day and interact appropriately with co-workers and supervisors in a stable, routine setting. He is limited to occasional public interaction.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

7. The claimant was born . . . [in] 1969. He was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 13, 2008, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 14-20.) The Appeals Council denied Fletcher's request for review on August 14, 2012, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-6.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected



to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).



**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**ISSUES**

Fletcher raises the following issues for this judicial review:

I. Treating physicians' opinions are entitled to great weight in the absence of compelling contrary evidence and may be entitled to controlling weight. The ALJ improperly gave little weight to the medical opinion of Dr. Tracy, whose opinions support a finding of disability. Where the ALJ improperly disregards or ignores the opinions of treating physician, can his decision be supported by substantial evidence?

II. Combination of impairments. The ALJ is required to consider the combination of all of a claimant's impairments, both severe and nonsevere. The ALJ fragmented Fletcher's impairments, failing to consider them in combination. Where the ALJ fails to adequately consider the combination of



a claimant's impairments, can his decision be supported by substantial evidence?

(Pl.'s Br., ECF No. 13.)

## DISCUSSION

Fletcher contends that the ALJ erred in rejecting the opinions of his treating physicians.[3] Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

---

[3] Although Fletcher's issues presented argue that the ALJ erred in evaluating the opinion of Dr. Tracy, Fletcher's arguments actually address opinions from other treating physicians, which are discussed below.



Fletcher challenges each of the reasons the ALJ presented for rejecting the opinions of his treating physicians. First, as summarized by the ALJ, Drs. Schutz, McCorkle, and Moss provided physical capacity assessments restricting Fletcher

> to sedentary work with limitations on the use of his upper and lower extremities. Dr. Schutz and Dr. Moss indicated that the claimant requires elevation of his legs at or above waist level from 40 to 60 percent of an 8-hour workday. All of these physicians indicated that the claimant would require unscheduled rest breaks 20 percent of an 8-hour workday due to pain. They also stated that he could be expected to experience debilitating pain 2 days a week. They added that the claimant's pain would prohibit him from sustaining attention to carry out one-to-two step tasks from 20 to 60 percent of an 8-hour workday.

(Tr. 17.)   The ALJ stated, "I reject the opinions of Drs. S[c]hutz, Dr. McCorkle, and Dr. Moss." (Id.)

As an initial matter, Fletcher points out that an outright rejection of a treating physician's opinion is contrary to applicable law.

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record *means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.* Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927.

SSR 96-2p (emphasis added). Ruling 96-2p also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. at *5.

Here, the ALJ appears to have rejected the opinions of three of Fletcher's treating physicians without weighing the requisite factors and assigning them weight accordingly. Even if the court were to assume that the ALJ meant to assign minimal weight to these opinions, however, the court concludes that such a determination was in error, as the ALJ does not appear to have considered all of the relevant factors, and such a conclusion is not supported by substantial evidence in the record.

The first reason that the ALJ gave for rejecting these opinions was that the opinions were "overly sympathetic to the claimant." (Tr. 17.) Without sufficient reasons explaining the basis for such a perception, this observation alone is not a sufficient reason for rejecting treating physicians' opinions. See 20 C.F.R. § 404.1527(c); Johnson, 434 F.3d at 654; Mastro, 270 F.3d 178.

Next, the ALJ stated that the treating physicians' opinions were not consistent with the clinical evidence or the physicians' treatment notes. Specifically, the ALJ found that "[t]he objective clinical and physical findings do not support the manipulative limitations indicated or the need for elevation of the legs during the day. There is no indication that these physicians have recommended elevation of the legs to the claimant." (Tr. 17.) With regard to the ALJ's statement regarding a lack of objective clinical and physical findings, the court observes that whereas the ALJ did not explain which clinical findings he found deficient or what manipulative limitations he determined were unsupported, the record contains abundant medical evidence showing that Fletcher experienced numbness, tingling, and parasthesias in his hands (Tr. 275, 278-79, 292-93, 315, 486, 489, 493-94); positive Tinel's sign (Tr. 278); positive Phalen's test (Tr. 278); hand and wrist swelling (Tr. 392, 489); complaints of dropping things (Tr. 278); arthritis (Tr. 357, 530); an emergency room visit for left wrist pain (Tr. 294-300); and positive findings of bilateral carpal tunnel syndrome (Tr. 202). Accordingly, the ALJ's finding that no clinical physical evidence supported manipulative limitations



is not supported by substantial evidence.  Similarly, the ALJ's finding of no support for the need for Fletcher to elevate his legs is problematic.  He appears to have rested this conclusion on the lack of a specific notation in the treatment notes that Fletcher must elevate his legs; however, the law provides that a treating physician's opinion may be accorded less deference when it is *not supported* by his own treatment notes, Craig, 76 F.3d at 590, and nothing in the treatment notes undermines the doctors' opinions that elevation of legs was necessary.  The fact that the treatment notes may not precisely parrot the physician's written opinion regarding limitations is alone insufficient to reject it.  Moreover, Dr. Moss's written opinion contains an explanation as to why he imposed the limitations, basing them on Fletcher's diagnosis, examination, and diagnostic test results.  (See Tr. 511-12.)

The next reason the ALJ gave for rejecting the treating physicians' opinions was that the severity of Fletcher's pain was not supported by medical evidence.  The court finds, viewing the record as a whole, that this conclusion is unsupported by substantial evidence.  The record is replete with medical evidence, including objective clinical tests, supporting the treating physicians' opinions regarding Fletcher's pain and limitations.  For example, numerous MRIs indicate cervical and lumbar spine as well as shoulder abnormalities.  (See Tr. 256-57) (MRI dated 2/21/08 indicating C4-5 through C6-7 disc degeneration and Luschka joint osteophytes at C3-4 and C6-7 with bilateral bony neural foraminal stenoses); (Tr. 258-59) (MRI dated 2/21/08 indicating acute on chronic AC arthoropy, subacromial-subdeltoid bursal inflammation, supraspinatus tendinosis, and degeneration or partial tear at biceps anchor-superior labral junction and hyaline cartilage of the superior glenoid); (Tr. 309-10) (MRI dated 4/10/08 showing moderate severity C3-4 through C6-7 disc degeneration; mild cord compression at C4-5 secondary to diffuse posterior spondylotic disc displacement; and



moderate bilateral C-4; severe bilateral C-5; moderate left C-6 and severe right C-6; moderate C-7 and severe C-7 bony neural foraminal stenoses); (Tr. 320-21) (MRI dated 8/11/08 showing diffuse disc bulging with a superimposed disc herniation from central to left neural foraminal region at L4-L5; moderate left neural foraminal narrowing and borderline central canal stenosis; and mild right neural foraminal narrowing L4-L5 and bilaterally at L3-L4); (Tr. 322-23) (MRI dated 8/11/08 showing bilateral hip mild degenerative joint disease); (Tr. 398-99) (MRI dated 3/12/09 showing left paracentral and foraminal disc protrusion at L4-L5 with moderate left neural foraminal stenosis and possible nondisplaced L4 pars defects; and facet arthropathy with mild neural foraminal stenosis at L3-L4). Additionally, an EMG and nerve conduction study on April 18, 2008 showed bilateral carpal tunnel syndrome, and similar tests on July 30, 2008 showed right lower lumbar nerve root irritation. (Tr. 291; 287-90.) Another EMG on August 21, 2009 indicated continued problems. (Tr. 435-37) (showing left chronic L5 and S1 radiculopathy). X-rays on July 3, 2008 showed AC joint arthropathy. (Tr. 275.) A lumbar discogram and CT scan of the lumbar spine on July 29, 2009 also indicated abnormalities. (Tr. 422-25) (showing evidence of a posterior left paracentral annular tear at the L4-L5 level associated with left paracentral and foraminal disc bulge and likely some displacement of the L5 nerve root as well as stenosis of the left neural foramen). Notably, Fletcher's treating pain specialist, Dr. Eugene Mironer, opined that Fletcher's complaints were consistent with his testing and imaging. (Tr. 510.) In the face of all of this medical evidence, the court finds the ALJ's conclusory statement that the treating physicians' opinions were not supported by medical evidence to be unsupported.[4]

---

[4] While the court observes that the ALJ discussed Fletcher's clinical test results in another portion of his opinion, this discussion does not explain why the ALJ found the treating physicians' opinions to be inconsistent with the clinical tests.



Finally, the ALJ, in rejecting Fletcher's treating physicians' opinions regarding his limitations, observed that Fletcher testified that he only takes over-the-counter medications for his pain. This testimony, however, is taken out of context of the record as a whole and does not provide a permissible basis to reject the treating physicians' opinions. First, Fletcher testified that he takes over-the-counter pain medications because he does not like the side effects of the prescription medication. (Tr. 38, 51) (explaining that he does not like "being in la-la land" and the medication makes him sleep, and that he takes hydrocodone only when the pain is so bad it makes him cry). Second, his treating physicians consistently prescribed narcotics to address Fletcher's pain. The only reasonable conclusion from the evidence in the record is that although the severity of Fletcher's pain warrants narcotic medication, he elects not to take narcotics because of their effect on his mental acuity.[5] The record does not support a finding that his pain was *adequately controlled* with over-the-counter pain medications. The ALJ's assumption otherwise is unsupported.

Thus, none of the reasons provided by the ALJ for his outright rejection of Fletcher's treating physicians' opinions are supported by substantial evidence, and the ALJ does not appear to have weighed all of the relevant factors in evaluating these opinions. Accordingly, this matter should be remanded to the Commission for further proceedings, including a proper evaluation of Fletcher's treating physicians.[6]

---

[5] A bottle of vodka might similarly better alleviate Fletcher's pain, but surely the ALJ would not fault him for taking mere ibuprofen instead.

[6] Although Fletcher also contends that the ALJ erred in failing to consider his impairments in combination, the court concludes that the ALJ's opinion adequately reflects that he did so, and therefore finds no merit to Fletcher's appeal on this issue.



**RECOMMENDATION**

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 10, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).